02-11-197-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00197-CR

 

 


 
 
 Noe Mendoza
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM Criminal
District Court No. 4 OF Tarrant
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
Noe Mendoza appeals his conviction for indecency with a child by exposure,[2]
contending in two points that the evidence is insufficient to support the
conviction and that the trial court abused its discretion by admitting evidence
of an extraneous offense.  We affirm.

Background
Facts

          According
to the testimony presented at trial, one afternoon in July 2010, A.A., a
six-year-old girl, was sitting alone on a bed in her parents’ apartment when
appellant, who was outside in an alley adjacent to the apartment complex,
exposed his erect penis.  A.A.’s mother (Mother) entered the bedroom to “fix
the bed,” and through a window that was nearby and perpendicular to the bed
where A.A. was sitting, Mother saw appellant’s erect penis while he was waving
to her.  Appellant’s pants were, according to Mother, “[d]own to the half.”  A.A.’s
back had been facing the window.

          Mother
called for her husband, A.A.’s father (Father), who was in the living room. 
Upon entering the bedroom, he saw appellant outside the window with his pants
around his knees.  According to Father, he hit the window, which prompted
appellant to pull his pants up and run away.[3] 
Father ran out of the house and attempted to chase appellant, but he lost
appellant after appellant jumped a fence.  

          The
family called the police, and the dispatcher sent Arlington police officer
Patricia Ramirez to the apartment.  Father told Officer Ramirez what had
happened and described what appellant looked like and was wearing—information
that Officer Ramirez relayed to another officer so that he could begin
searching for appellant.  Soon after Officer Ramirez left, Father got into his
car and began searching the area.  He saw appellant near a school, and he
called the police and told them where he had seen him.  Nathan Deary, another
Arlington police officer, was patrolling that section of town, and the
dispatcher directed him to the general area where appellant had been seen. 
Soon thereafter, Officer Deary found appellant.  When Officer Deary detained
appellant, appellant stated that he had been trying to “take a piss.”  Officer Ramirez
arrived and confirmed with Father that appellant was the suspect.  Officer Deary
arrested appellant.

          A
few days later, Mary Margarete Almy, a detective who had been assigned to appellant’s
case, went to A.A.’s apartment.  She had compiled a photo lineup to present to
the family.  Father identified appellant in the lineup as the suspect.  Detective
Almy then went to the jail where appellant was being detained, and after he
waived his rights, he told her that he had stopped in the alley only to urinate
when Mother, while “grinning from ear to ear,” tapped on the window, waved at
him with her hand, and motioned to a bed.  Appellant told Detective Almy that
he ran away because he saw Father and that Mother must have told Father
something false about appellant to “save her own skin.”

          A
grand jury indicted appellant for indecency with a child by exposure; the
indictment contained an enhancement paragraph alleging that appellant had been
previously convicted of a felony.  Before trial, the State gave notice to
appellant of its intent to offer evidence of several extraneous offenses,
including appellant’s 2001 conviction for indecent exposure.  At trial, appellant
pled not guilty, but a jury found him guilty.  After appellant pled true to the
indictment’s enhancement allegation, the trial court sentenced him to eleven
years’ confinement.  Appellant brings this appeal.

Evidentiary
Sufficiency 

In
his first point, appellant contends that the evidence is insufficient to
support his conviction.  In our due-process review of the sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Isassi, 330 S.W.3d at 638.

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.  The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Isassi, 330 S.W.3d at 638; Hooper, 214 S.W.3d
at 13.

          A
person commits indecency with a child by exposure if, with a child younger than
seventeen years of age, the person exposes the person’s genitals, knowing the
child is present, with the intent to arouse or gratify the sexual desire of any
person.  Tex. Penal Code Ann. § 21.11(a)(2)(A); see Allen v. State, 180
S.W.3d 260, 264 (Tex. App.—Fort Worth 2005, no pet.).  Appellant has not contested
the facts that A.A. was younger than seventeen or that he exposed his genitals.
 Rather, appellant contends that the exposure accompanied an intent to urinate
rather than to arouse or gratify someone’s sexual desire.[4] 
He also argues that there is insufficient evidence that A.A. saw his genitals,
and he seems to assert that there is insufficient evidence that he could see
A.A. from the alley and therefore knew that she was present.

Appellant’s
sexual intent

          Appellant
argues that his urination theory was not “refuted by the police” and that he
had no sexual intent or desire for gratification while exposing his penis
outside of A.A.’s apartment.  Through the admission of appellant’s jailhouse
interview, the jury learned of his version of the events relevant to this
case.  Specifically, appellant told Detective Almy that he was walking to buy
groceries when he needed to urinate.  Appellant said that while he was
urinating in the alley next to A.A.’s apartment and facing away from the
apartment’s windows, Mother tapped on her window, waved at him to come toward
her, smiled, and motioned toward a bed.  But the jury heard conflicting
testimony from Mother, who said that she was upset and called to her husband when
she saw appellant in the alley while his pants were “[d]own to the half” and
while he was holding his erect penis.

In
determining the sufficiency of the evidence to show an appellant=s
intent, and faced with a record that supports conflicting inferences, we Amust
presume—even if it does not affirmatively appear in the record—that the trier
of fact resolved any such conflict in favor of the prosecution, and must defer
to that resolution.@  Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  Moreover, the jury is free to
accept or reject any or all of the evidence of either party.  See Hennings
v. State, 343 S.W.3d 433, 436 (Tex. App.—El Paso 2010, no pet.);
Franklin v. State, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.). 
By its conviction, the jury indicated its choice to believe Mother’s account of
what had happened rather than appellant’s story.  Also, as we will explain in
more detail below, the jury heard evidence that on a prior occasion, appellant
had exposed his erect penis in public while trying to sexually gratify himself
and that he likewise had claimed on that occasion that he had only been
urinating.  The jury therefore had a rational reason to disbelieve appellant’s
urination theory.  Thus, viewing the evidence in the light most favorable to
appellant’s conviction, we conclude that a rational factfinder could have
determined that appellant exposed his genitals “with the intent to arouse or
gratify the sexual desire of any person.”  See Tex.
Penal Code Ann. § 21.11(a)(2)(A); Isassi,
330 S.W.3d at 638.

The
materiality of whether A.A. could see appellant 

          Appellant
also characterizes the evidence as insufficient because no evidence suggests
that A.A. saw appellant.  But section 21.11(a)(2)(A) of the penal code does not
require a victim of indecency with a child by exposure to be aware of the
exposure; all the statute requires is that the offender knew a child was
present and exposed his or her genitals with the intent of gratifying someone’s
sexual desire.  See Tex. Penal Code Ann. § 21.11(a)(2)(A); Breckenridge
v. State, 40 S.W.3d 118, 125 (Tex. App.—San Antonio 2000, pet. ref’d)
(concluding that the crime of indecency with a child by exposure concerns what
the defendant exposed, not what the victim saw); Wilson v. State, 9
S.W.3d 852, 856 (Tex. App.—Austin 2000, no pet.) (“As defined by the statute,
the offense is based on the accused’s actions and intent, not the victim’s
comprehension.  Accordingly, the State need only prove that the defendant’s
genitals were exposed to the victim, not that they were actually seen by
the victim.”); Uribe v. State, 7 S.W.3d 294, 297 (Tex. App.—Austin 1999,
pet. ref’d); see also Metts v. State, 22 S.W.3d 544, 547 (Tex. App.—Fort
Worth 2000, pet. ref’d) (holding similarly when the crime was indecent exposure
to an adult).  Because the State was not required to prove that A.A. saw
appellant’s genitals or was aware of their exposure, we hold that the evidence
was not insufficient to support appellant’s conviction for the State’s failure
to prove those facts.

The
sufficiency of the evidence that appellant knew of A.A.’s presence

          Finally,
appellant appears to challenge the sufficiency of the evidence to prove that he
knew that A.A. was present when he exposed his penis and attempted to gratify
his sexual desire.  See Tex. Penal Code Ann. § 21.11(a)(2)(A)
(requiring that, for a conviction of indecency with a child by exposure, the
defendant must know of the child’s presence while the defendant exposes
genitals).  The circumstantial evidence presented at trial, however, presents
several reasons why the jury could have rationally inferred that appellant knew
of A.A.’s presence while he was sexually gratifying himself.

          First,
appellant admitted at least five times in his statement to Detective Almy that he
knew of a child’s presence in the apartment after (under his version of the
facts) Mother tapped on the window and waved at him to come toward her.  The
jury could have disregarded appellant’s overall version of the events leading
to his conviction but accepted that he knew of A.A.’s presence.  See Franklin, 193
S.W.3d at 620 (“[T]he jury is free to accept or reject any or all of the
evidence of either party. . . .”).

          Second,
the jury heard Officer Ramirez testify that appellant’s offense happened during
the day, that the curtains to the window in the apartment’s bedroom were open,
and that a person would have been able to see inside the room from the alley.  Third,
the jury heard Mother testify that appellant waved to her and could see her in
the bedroom.  And the jury could have rationally inferred that appellant was already
looking at something in the bedroom at the time Mother entered into it (and
therefore at the time that he was holding his erect penis) from the following
testimony that occurred during cross-examination:

          Q.  . . .  When you first saw [appellant],
wasn’t this man closer to the chain-link fence than to the window?

          A.  Yes.[[5]]

          Q.  And was he facing you or was he -- did he
turn towards you when you walked into the room?

          A.  He was looking inside the window.  [Emphasis
added.]

Later,
during redirect examination by the prosecutor, Mother gave the following
testimony:

          Q.  It was clear though that he could see you?

          A.  Yes.

          Q.  And that he could see into that room?

          A.  Yes.

          Fourth,
Detective Almy testified that when she went to A.A.’s apartment and was
standing outside of it, she was able to see, through the window, the bed, the television,
and down the hallway.  Detective Almy also opined that the bed that A.A. had
been sitting on was in “full view of the window,” and appellant told Detective
Almy that he had seen a bed.

          We
recognize that other evidence could have raised a conflicting inference about
whether appellant knew of A.A.’s presence.  On cross-examination, Detective
Almy recognized that it would be hard for someone, from outside in the alley,
to see someone who was sitting against the bed’s headboard, as, according to
Mother’s testimony, A.A. was.  She said that she had assumed that appellant
could see A.A. and was masturbating at the same time.  Similarly,
Mother testified that it would have been difficult for appellant to see A.A. on
the bed, which was perpendicular to the window, while looking inside the
window.  Again, however, appellant admitted seeing the bed.

          In
viewing all of the evidence in the light most favorable to the jury’s verdict
and in deferring to the jury’s responsibility to resolve conflicts in the
evidence, we conclude that the jury could have rationally found, beyond a
reasonable doubt, that appellant knew of A.A.’s presence while he was exposing his
penis and sexually gratifying himself.  See Isassi, 330 S.W.3d at 638.

          For
all of these reasons, we hold that the evidence is sufficient to support
appellant’s conviction, and we overrule his first point.

The
Admission of an Extraneous Offense

          In
his second point, appellant argues that the trial court erred by admitting
evidence of an extraneous offense at the guilt-innocence phase of the trial.  We review
the trial court’s admission of evidence under an abuse of discretion standard.  Price
v. State, 351 S.W.3d 148, 150 (Tex. App.—Fort Worth 2011, pet. ref’d); see
Montgomery v. State, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991) (op. on
reh’g).  Under this standard, the trial court’s ruling will be upheld as long
as it falls within the “zone of reasonable disagreement.”  Alami v. State,
333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.); Karnes v. State,
127 S.W.3d 184, 189 (Tex. App.—Fort Worth 2003, pet. ref’d), cert. denied,
129 S. Ct. 2391 (2009).

          “Evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident
. . . .”  Tex. R. Evid. 404(b);[6]
see Montgomery, 810 S.W.2d at 387–88.  The State, as the proponent
of extraneous offense evidence, bears the burden of showing admissibility.  Russell
v. State, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref’d).  “Whether
extraneous offense evidence has relevance apart from character conformity, as
required by Rule 404(b), is a question for the trial court.”  Moses v. State,
105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

          Rebuttal
of a defensive theory, such as mistake or accident, is one of the permissible
purposes for which evidence may be admitted under rule 404(b).  Id. at
626; see Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) (“Probably
the most common situation which gives rise to the admission of extraneous
offenses is in rebuttal of a defensive theory.”), cert. denied, 493 U.S.
874 (1989), overruled on other grounds by Alford v. State, 866 S.W.2d
619 (Tex. Crim. App. 1993).  In fact, a defendant’s opening argument may open
the door for the admission of extraneous offense evidence.  Powell v. State,
63 S.W.3d 435, 439–40 (Tex. Crim. App. 2001); Rivera v. State, 269
S.W.3d 697, 706 (Tex. App.—Beaumont 2008, no pet.); see also Hayden v. State,
296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (explaining that evidence that is
otherwise inadmissible may become admissible when a party opens the door to
such evidence by leaving a false impression with the jury that invites the
other side to respond).  A defendant’s cross-examination of witnesses may
also open the door for the admission of extraneous offenses.  See Price,
351 S.W.3d at 151–52.

          Appellant
first alluded to his urination theory during voir dire, when his trial counsel
told the jury panel, 

Now, we’re going to get to a couple of questions that are
probably more suited for the men in this room.  I know I kind of laugh when I
was thinking about these. . . .  

          Now, the good part is how many guys are going
to raise your hands is what I want to know.[[7]] 
And if you don’t, that’s okay.  I’m going to ask anyway.  How many guys here or
anyone -- I shouldn't say just guys, because when I was a cop, I actually came
across some women who were not in the restroom that were going, so it happens. 

Then, during her opening statement,
appellant’s other attorney said, 

 

          Ladies and Gentlemen of the jury, this is not a
case of public indecency.  This is a case about public urination.  And
while that may be offensive, that is the case. . . .  [Appellant] needed
groceries, so he was walking north towards the Kroger which is on North Lamar
Street.  And it’s about a little over a mile and a quarter.  

          While he was walking, he realized he needed to
use the restroom.  He found this alley behind an apartment complex that was
fairly secluded.  He went to use the restroom.  Unfortunately, he didn’t
realize that there was a window and there were people inside.  This is a
case about public urination.  

          When he realized there were people inside and there
were people, you know, yelling at him, he ran.  He didn’t want to get a ticket
for public urination.  He told Detective Almy, I was using the restroom.  He
told Detective Ramirez, Officer Ramirez, I was using the restroom.  He told
Officer Deary, I was using the restroom.

          He has remained consistent that he was using
the restroom.  This is a case about public urination, not public indecency. 
And I believe that at the end of this trial, the evidence will show that this
is a case for another court and another day.  This is a case about public
urination.  [Emphasis added.]

          Appellant
continued to imply that he had been urinating rather than sexually gratifying
himself when his counsel asked Officer Ramirez, “[I]f you wanted to use the
restroom, would you be more likely to go somewhere private or somewhere public?” 
Counsel then asked Officer Ramirez whether she had noticed urine in the alley
where appellant had been standing, but Officer Ramirez said that she had not
walked back there.

          During
trial, outside of the presence of the jury, the trial court held a hearing
concerning whether it would allow testimony from Arlington Police Department
Detective Heath Cook.  In the hearing, Detective Cook explained that in 2000,
he was working at Randol Mill Park, which was a place where “criminal offenses
were occurring in the bathrooms.”  When Detective Cook went into a restroom and
stood in front of a urinal that was next to appellant’s urinal, Detective Cook
never heard appellant urinate; instead, Detective Cook noticed appellant’s arm
“rocking back and forth” and saw appellant’s erect penis, which led Detective
Cook to believe that appellant was masturbating.  Detective Cook arrested
appellant, and appellant “stated over and over, [‘]I wasn’t doing anything
wrong, I was only urinating.[’]”  Over appellant’s objection,[8]
the trial court allowed Detective Cook to state these same facts, in more
detail, in front of the jury, and the court told appellant that a limiting
instruction would be put in the jury charge.[9]

          We
conclude that the trial court’s decision to admit Detective Cook’s testimony under
rule 404(b), to rebut appellant’s defensive theory and to show appellant’s sexual
intent, which appellant had placed in question, at least falls within the zone
of reasonable disagreement.  See Alami,
333 S.W.3d at 889.  Specifically, the trial court could have reasonably found
that appellant’s
voir dire, opening statement, and cross-examination, which set up appellant’s
theory that he was only urinating outside of A.A.’s apartment, opened the door
for extraneous offense evidence that informed the jury that appellant had once
before sexually gratified himself in public while using the same excuse.  See Johnson
v. State, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref’d)
(explaining that once the defendant claims a lack of intent, “intent can no longer
be inferred from other uncontested direct evidence, and the State is allowed to
prove intent through evidence of other crimes, wrongs, or acts”).

          Appellant
argues that distinctions between the 2000 offense and his act outside of A.A.’s
apartment—such as the relative enclosure of the restroom in 2000 and the lack
of the presence of a child on that occasion—rendered evidence of the 2000
offense inadmissible.  When an extraneous offense is offered to rebut a
defensive theory or show intent, however, the law does not require exacting
similarity between the extraneous and charged offenses.  See Bishop v.
State, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993); Dennis v. State,
178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d); see also
Mayfield v. State, Nos. 02-05-00386-CR, 02-05-00387-CR, 2007 WL 938697, at
*6 (Tex. App.—Fort Worth Mar. 29, 2007, pet. ref’d) (holding that when the
defendant offered a theory that he was framed for sexually assaulting a child,
evidence that he had looked into underage girls’ bedroom windows while they
were undressing was admissible because it displayed the defendant’s
inappropriate sexual interest in such girls); cf. Plante v. State, 692
S.W.2d 487, 493 (Tex. Crim. App. 1985) (noting that there must be a high degree
of similarity between the charged and extraneous offenses when the issue is the
identity of the defendant).

          Although
the charged and extraneous offenses certainly have distinct characteristics, we
hold that the trial court did not exit the zone of reasonable disagreement, and
therefore abuse its discretion, by implicitly determining that the facts of the
extraneous offense are sufficiently similar to the facts of this offense to
justify its admission under rule 404(b).  See Alami,
333 S.W.3d at 889.  Both offenses involved appellant’s sexual
gratification in public and exposing himself to others.  And more importantly,
in both instances, appellant responded to his arrest by claiming that he was
only urinating; the admission of the extraneous offense therefore weakened the
credibility of appellant’s defensive theory.

          Finally,
appellant argues that the extraneous offense should have been excluded because
it occurred ten years before the charged offense and was therefore too remote
to be admissible.  In the trial court, appellant did not argue remoteness as a
ground for exclusion of the evidence.  Therefore, we hold that appellant may
not raise that argument for the first time on appeal.  See Tex.
R. App. P. 33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691–92 (Tex.
Crim. App. 2009); Chambers v. State, 903 S.W.2d 21, 32 (Tex. Crim. App.
1995) (holding that a defendant’s complaint on appeal about the remoteness of
an extraneous offense had been forfeited by the defendant’s failure to raise
remoteness in the trial court); Grider v. State, 69 S.W.3d 681, 686
(Tex. App.—Texarkana 2002, no pet.) (“Although remoteness is a factor, because
Grider did not raise the issue of remoteness as a basis for his objections at
trial, we are unable to review that issue.”).

          For
all of these reasons, we overrule appellant’s second point.

Conclusion

          Having
overruled both of appellant’s points, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

 

DAUPHINOT,
J., concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 5, 2012









[1]See Tex. R. App. P. 47.4.





[2]See
Tex. Penal Code Ann. § 21.11(a)(2)(A) (West 2011).





[3]Mother
testified that Father “made some signals and [appellant] left” quickly.





[4]Appellant concedes that he “admitted that
he had been outside the apartment’s back window [with] his penis out.”





[5]While
Mother said that appellant was closer to the fence than the window, Father
testified that when he came into the bedroom, appellant was within inches of
the window.





[6]The
list of admissible purposes of extraneous offenses recited by rule 404(b) is
illustrative, not exhaustive.  Johnston v. State, 145 S.W.3d 215, 219
(Tex. Crim. App. 2004).





[7]The
record indicates that appellant’s counsel had displayed a question about
urination to the jury panel without reading the question into the record.





[8]Appellant’s
objection included an argument that even if evidence of the extraneous offense
was admissible under rule 404(b), the evidence should have been excluded as more
prejudicial than probative under rule 403.  See Tex. R. Evid. 403 (“Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice . . . .”). 
Appellant has not urged on appeal, however, that the evidence was inadmissible
under rule 403, and appellant concedes that the trial court “was requested to
and did perform the required balancing test” in admitting the extraneous
offense.





[9]The
jury charge stated that the jury could consider other offenses or bad acts only
in determining lack of mistake, proof of motive, opportunity, intent,
preparation, plan, or appellant’s state of mind.  The trial court also gave a
limiting instruction verbally during Detective Cook’s testimony.