COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|   |   |   |
|---|---|---|
| HENRY CHARLES HENNINGS III, | § | No. 08-08-00168-CR |
| Appellant, | § | Appeal from |
| v. | § | County Court |
| THE STATE OF TEXAS, | § | of Andrews County, Texas |
| Appellee. | § | (TC # 06-0444-DWI) |
|   | § |   |

**O P I N I O N**

Henry Charles Hennings III was charged with the offense of driving while intoxicated. He pled not guilty and proceeded to trial. The jury returned a verdict of guilty and the trial judge assessed punishment. Appellant was sentenced to confinement of 180 days in the Andrews County Jail, but the court probated the sentence to one year of community supervision; one year of driver's license suspension; eighty hours of community service; and a fine of $250 plus court costs. For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

On June 29, 2006, Appellant was involved in a one-car rollover accident just east of Andrews, Texas while he was traveling west bound on Highway 176. The accident was witnessed by Robert De La Pena, who called authorities to alert them. De la Pena testified that Appellant told him he was reaching for his cell phone before the accident occurred. De La Pena left the scene after he called 9-1-1 and once Lieutenant Kim Gray arrived.

Lieutenant Grey checked Appellant's condition, but he did not observe any obvious signs of

medical trauma aside from a small cut. Appellant refused medical treatment, smelled of alcohol, and did not seem to have it "all together." Lt. Gray related his observations to the next officer to arrive-- Deputy Mark Greenhaw--and left the scene of the accident.

Deputy Greenhaw testified that he smelled the odor of alcohol emanating from Appellant and observed Appellant to have dilated glassy eyes. Deputy Greenhaw asked Appellant if he had any alcohol or drugs in his vehicle. Appellant admitting having pills but denied having any alcohol. Deputy Greenhaw recovered a bottle of Diazepam from inside the vehicle and a half-empty bottle of Jagermeister from the bed of the vehicle. Deputy Greenhaw called for a DPS trooper and Trooper Alonzo Urquidi arrived shortly thereafter.

Trooper Urquidi observed that Appellant smelled of alcohol, had slurred speech, and demonstrated six clues on the horizontal gaze nystagmus test and eight clues on the walk-and-turn test. When Appellant realized his actions were being recorded, he refused to participate in any further field sobriety tests. Trooper Urquidi testified that although Appellant initially denied having any alcohol, he later admitted that he might have some. He also admitted taking Diazepam and Seroquel prior to the accident, although he gave conflicting accounts of precisely when he took the pills. The medication had made him feel tired all day and he told the trooper that the pills were the reason for his lethargic appearance, which he pronounced "lesargic." Trooper Urquidi placed the bottle of Jagermeister in front of the video camera in plain view and then arrested Appellant for driving while intoxicated.

Appellant did not receive any medical attention before being transported to the Andrews County Jail. Appellant's family called the jail concerned about Appellant and his need to take his medication. The jailers advised his family that he could not take his medication because he had been drinking. Trooper Urquidi offered Appellant the opportunity to take a portable breath test that would

detect the presence or absence of alcohol, but Appellant refused. He was not allowed to take medication while in jail because he still smelled of alcohol. As soon as he was released, Appellant presented at Artesia General Hospital, where doctors confirmed that he suffered a concussion. Subsequent imaging studies likewise confirmed that the accident resulted in a broken neck.

Dr. Carl Brown, a neurologist, testified as an expert witness on behalf of the defense. He opined that the characteristics exhibited by Appellant were attributable to the concussion and the broken neck he suffered in the accident. Appellant has been treated for bipolar disorder, the symptoms of which are similar to the characteristics observed by the officers on the scene of the accident. While the doctor explained that the medications Appellant took would not impair his ability to drive, he agreed that the side effects of the pills could mirror signs of intoxication.

During trial, the defense learned that the bottle of Jagermeister had been destroyed while in the custody of Trooper Urquidi and the Department of Public Safety. Defense counsel moved for dismissal based on the State's failure to disclose that key evidence had been destroyed. This motion was denied. Counsel then asked that the jury be instructed to disregard all testimony and evidence related to the Jagermeister based on the State's failure to notify the defense of the destruction of the evidence. The court also denied this motion. Finally, counsel requested a jury instruction on spoliation whereby the jury would be instructed that if a party destroys evidence he has a duty to retain, the jury can presume that the evidence was unfavorable to the party who destroyed it. The court denied this request as well.

## SUFFICIENCY OF THE EVIDENCE

In Points of Error One and Two, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction for driving while intoxicated.

*Standard of Review*

In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). More particularly, sufficiency of the evidence should be measured by the elements of the offense, as defined by the hypothetically-correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Dwyer v. State,* 836 S.W.2d 700, 702 (Tex.App.--El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, so the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State,* 901 S.W.2d 640, 650-52 (Tex.App.--El Paso 1995, pet. ref'd); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Leyva v. State,* 840 S.W.2d 757, 759 (Tex.App.--El Paso 1992, pet. ref'd); *Bennett v. State,* 831 S.W.2d 20, 22 (Tex.App.--El Paso 1992, no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843, *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State,* 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd).

When conducting a factual sufficiency review, we view all of the evidence in a neutral light. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is

against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Under the first prong of *Johnson,* we cannot say that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit, had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that the evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting our factual sufficiency review, we must also discuss the evidence which Appellant claims is the most important in allegedly undermining the finding. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). We defer to the fact finder's determination of witnesses' credibility and of the weight given to the evidence. Cleveland v. State, 177 S.W.3d 374, 388 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd), *cert. denied,* 547 U.S. 1073 (2006).

*Driving While Intoxicated*

A person commits the offense of driving while intoxicated if the person "is intoxicated while operating a motor vehicle in a public place." TEX.PENAL CODE ANN. § 49.04(a)(Vernon 2003). A person is intoxicated if: (1) they do not have the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (2) the person has an alcohol concentration of 0.08 or more." TEX.PENAL CODE ANN. § 49.01(2)(A)-(B).

It is undisputed that Appellant was operating a motor vehicle in a public place. We focus our analysis on whether the evidence was sufficient to show that Appellant was intoxicated, bearing in

mind that intoxication may derive from alcohol, a drug, or a combination thereof. With regard to the legal sufficiency of the evidence, the record reveals:

- Appellant was involved in a one car accident, and according to witness Robert De la Pena, Appellant veered off the road several times and lost control of his vehicle.

- Lt. Gray, second on the scene, observed Appellant to have the odor of an alcoholic beverage on his person. He also observed that Appellant "didn't seem like he was altogether."

- Deputy Greenhaw, positioned downwind, noted the smell of an alcoholic beverage coming from Appellant. Appellant's pupils were dilated and his eyes were glassy. Appellant had a hard time balancing himself and used the vehicle to steady himself. Appellant admitted that he had pills inside his vehicle. Deputy Greenhaw located a half empty bottle of liquor and a bottle of Diazepam.

- Trooper Urquidi smelled an odor of alcohol coming from Appellant's breath when talking with Appellant. Appellant's speech was slow and slurred and Appellant appeared to speak with a thick tongue. Appellant admitted taking Valium and Seroquel prior to the accident, although he gave differing accounts of when he took the pills. Appellant admitted the medication made him feel tired all day.

- Trooper Urquidi observed Appellant to have equal size pupils and Appellant's eyes tracked together. Appellant had distinct jerking in his eyes to the left and right. Appellant's left and right eyes jerked at maximum deviation. Appellant exhibited a total of six clues on the HGN portion of the standardized field sobriety tests.

- Trooper Urquidi testified that Appellant had a hard time following the instructions to begin the walk-and-turn test. Appellant had difficulty placing his right foot in front of his left foot and took an incorrect number of steps. Trooper Urquidi and Deputy Greenhaw had to position themselves on each side of Appellant to keep him from falling. During the walk-and-turn test, Trooper Urquidi observed Appellant to have eight clues indicating intoxication. As soon as Appellant found out he was being recorded, he refused to continue the standardized field sobriety testing. He also refused to take the one-leg-stand test and declined to provide a blood sample.

From this testimony, the jury could have found Appellant guilty of driving while intoxicated. Several law enforcement officers smelled alcohol on Appellant. He lost control of his vehicle and wrecked without any outside causation. He failed two standardized field sobriety tests and refused to complete the third. Appellant admitted taking Valium and Serroquel, which can cause side effects like those Appellant exhibited. Based on this evidence, any rational trier of fact could have found

beyond a reasonable doubt that Appellant did not have the normal use of his mental or physical faculties by reason of introduction of alcohol, a controlled substance, or a combination thereof into his body, and thus was intoxicated. *See* TEX.PENAL CODE ANN. § 49.04(a). The evidence is therefore legally sufficient.

Our review of the record further reveals that the great weight and preponderance of the evidence does not contradict the jury's finding. Appellant argues that Dr. Brown's testimony concerning a concussion and broken neck created a reasonable doubt as to the cause of Appellant's impairment. Dr. Brown did indeed testify that concussions may cause slurred speech, loss of balance, poor attention span, poor gait, poor memory, lack of cooperation, and irritability. He also explained that someone suffering from a concussion would have horizontal gaze nystagmus. He did not believe that Appellant's medications would impair or adversely affect his ability to drive.

But the jury was free to consider the testimony of Dr. Brown on cross-examination concerning the side effects of taking Valium and Seroquel and their accentuation when mixed with alcohol. Here, Appellant admitted to taking Valium and Seroquel, and there is ample evidence to indicate that he consumed alcohol. Three different law enforcement officers testified that Appellant smelled of alcohol. Appellant admitted that he might have alcohol in his vehicle, which was later confirmed. Also, Trooper Urquidi testified that the jailers were not able to give Appellant his medication because he still smelled of alcohol in the jail breaking room. Because the jury could have reasonably concluded that Appellant was guilty of driving while intoxicated, and their determination was not clearly wrong, unjust, or against the great weight of the evidence, the evidence is factually sufficient. We overrule Points of Error One and Two.

## SPOLIATION OF EVIDENCE

In Point of Error Three, Appellant complains of the trial court's refusal to submit a spoliation

or adverse inference instruction once it was discovered that the State had destroyed key evidence. The State responds that the issue has been waived. We agree for two reasons.

*Rule 31*

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. TEX.R.APP.P. 33.1(a)(1). To be timely, an objection must be lodged as soon as the objectionable nature of the testimony becomes apparent. *Murillo v. State*, 839 S.W.2d 485, 493 (Tex.App.--El Paso 1992, no pet.).

We begin by chronicling the steps taken by the defense. Appellant maintains in his brief that throughout the pretrial stage and continuing through the day before trial, the prosecutor and defense counsel were open about evidence and witnesses. "Not only did both sides have valid agreements in place regarding disclosure of witnesses and evidence, but Officer Urquidi specifically testified that he confiscated the bottle of Jagermeister to use as evidence against Appellant." Appellant now complains that he was unable to test the bottle for fingerprints, to test whether the substance in the bottle was an alcoholic beverage, and to test the credibility of the peace offices by presenting the bottle to the jury to determine how full it was and what the liquid smelled like. Appellant further argues that the State initiated questions to every single witness about the liquor bottle, knowing the entire time that the bottle had been destroyed and that the defense didn't know it.

The State responds that Appellant never filed a motion for production and inspection or a motion to suppress. Nor has he demonstrated that there is a reasonable probability that the results would have been different had the State informed the defense that the bottle had been lost or destroyed. Additionally, the record reflects that the bottle was mentioned four times – without objection – even after Trooper Urquidi admitted he didn't know where the bottle was. Appellant

thoroughly cross-examined the Trooper about when he learned the bottle was missing, yet passed him for re-direct without objecting to testimony about the bottle. No objection was lodged on re-cross either. Not until the State rested did Appellant object to additional references to the Jagermeister. Consequently, the issue has been waived.

*Violations of Constitutional Due Process*

Appellant also complains that destruction of the liquor bottle violates both his rights to due process under the 14th Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution. In support of his arguments, Appellant first directs us to *Ramirez v. State*, 2007 WL 4375936 (Tex.Crim.App. Dec 12, 2007)(No. AP-75167)(slip op.), *cert. denied, Navarro-Ramirez v. Texas*, 129 S.Ct. 44, 172 L.Ed.2d 51, 77 USLW 3198 (U.S.Tex. Oct. 6, 2008)(No. 07-10436). On appeal, Ramirez complained that the State engaged in spoliation of the evidence by recording over part of a videotape. *Id.* at *9. The court addressed the issue as follows:

> Appellant's claim that the State engaged in spoliation of the videotape is merely speculative. At the hearing on the motion for a new trial, defense counsel argued that Morales had testified at the suppression hearing that the officer continued videotaping after the arrest, and that the police stated they found drugs but 'none of that is on the videotape.' Defense counsel theorized that '[m]aybe they are part of the tape that got recorded over.' The trial court responded that Morales 'testified that she didn't follow them around for every aspect of the recording' and 'was not specific [that] they had the recorder on at all times.' On direct appeal, appellant argues that the State 'record[ed] over part of the tape showing the roach pills on the floor.' Appellant never testified at the suppression hearing that the pills were on the floor. He testified that he kept the pill packages inside his wallet. On this record, we cannot say that the State engaged in spoliation. Points of error nine and ten are overruled.

*Id.* at *12. The court used the word spoliation, but it does not discuss or adopt the spoliation doctrine. *Id.* at *12. It ultimately issued seven holdings regarding the issues presented in the case, but spoliation was not one of them.

We now turn to the four decisions in *Pena v. State.* Pena objected to the admission of

laboratory test results because the State destroyed the substance tested before trial. In *Pena v. State (Pena I)*, 166 S.W.3d 274 (Tex.App.--Waco 2005, pet. granted), the Waco Court of Appeals *sua sponte* considered whether the provisions of Article 1, Section 19 of the Texas Constitution [the Due Course of Law provision] provide greater protection that the due process provisions of the Fourteenth Amendment to the United States Constitution. Concluding that the Texas Constitution provides a greater level of protection with respect to lost or destroyed evidence than does the United States Constitution, the court reversed and remanded, even though the record contained no evidence of bad faith on the part of the law enforcement officials involved. Upon the State's petition for discretionary review, the Court of Criminal Appeals vacated and remanded, holding that since the issue was neither raised on appeal nor briefed by the parties, the intermediate court erred in failing to give the parties the opportunity to brief the issue. *Pena v. State (Pena II)*, 191 S.W.3d 133 (Tex.Crim.App. 2006).

On remand, the Waco court engaged in a lengthy discussion, concluding:

● the state constitution should be interpreted as providing broader protection than its federal counterpart only if such an interpretation has firm support in state history or policy; thus, the state constitution should be interpreted as providing rights not found in the federal constitution only when unique aspects of state history, jurisprudence, or law support that separate interpretation;

● under the due course of law provision of the state constitution, the State has a duty to preserve material evidence which has apparent exculpatory value, encompassing both exculpatory evidence and evidence that is potentially useful to the defense;

● a criminal defendant has a right to inspect evidence indispensable to the State's case because that evidence is necessarily material to the defense of the accused;

● in a marihuana case, the alleged marihuana is necessarily indispensable to the State's case, and the defendant has a right to inspect that evidence; consequently the State has duty to preserve plant material alleged to be marihuana, in prosecution for possession;

● there are generally three recognized remedies for the loss or destruction of evidence: (1) dismissal; (2) exclusion of related evidence; or (3) an adverse inference instruction;

● an adverse inference instruction was an appropriate remedy for State's destruction of plant material alleged to be marihuana and lab file documenting its testing and subsequent destruction, in prosecution for possession of marihuana.

*Pena v. State (Pena III)*, 226 S.W.3d 634 (Tex.App.--Waco 2007). The majority reversed and remanded for a new trial. Chief Justice Gray dissented, writing that even if the majority's analysis of the merits were correct, Pena's failure to preserve his complaint was fatal to his issue. Not surprisingly, the case proceeded back up the appellate ladder.

The Court of Criminal Appeals issued its opinion in *Pena v. State (Pena IV)*, 285 S.W.3d 459 (Tex.Crim.App. 2009) on April 8, 2009. It reversed on the ground that Pena's Texas constitutional claim was not preserved for review:

> Here, the record shows that Pena did not preserve his due course of law provision claim for appellate review, and the Waco Court of Appeals erred in concluding otherwise. Although Pena eventually invoked the Texas due course of law provision when objecting before the trial judge, he failed to argue that it provides greater protection than the federal Due Process Clause. Indeed, based on Pena's initial objection under the Fourteenth Amendment, the record shows that the judge and the State understood that Pena's complaint was under only the well established federal standard concerning lost or destroyed evidence. Pena never disabused the judge of this notion even when, in reurging his prior objections to 'protect the appellate record,' he first cited to Article 1, Section 19. Pena was obligated to put the trial judge on notice of the specific legal theory that he intended to advocate because: the federal constitutional standard was clearly established; the trial judge and the State unmistakably relied solely on the federal standard; and there is no independent interpretation on the subject of lost or destroyed evidence under the Texas Constitution's due course of law provision. We hold that, by failing to distinguish the rights and protections afforded under the Texas due course of law provision from those provided under the Fourteenth Amendment before the trial judge in this context, Pena failed to preserve his complaint that the due course of law provides greater protection for appellate review.

*Id.* at 464 (footnote deleted).

On the basis of the record before us, we must similarly conclude that the issue has not been preserved for review. At trial, defense counsel relied upon civil cases from the Texas Supreme Court, including *Trevino v. Ortega*, 969 S.W.2d 950, 951, 953 (Tex. 1998)(explaining that courts

may impose sanctions for "spoliation of evidence") and *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003)(explaining spoliation as the deliberate destruction of, failure to produce, or failure to explain the non-production of relevant evidence, which, if proved, may give rise to a presumption that the missing evidence would be unfavorable to the spoliator). The State responded that the Court of Criminal Appeals has not adopted the doctrine of spoliation. The trial court then ruled:

> I'm going to go with the State. It's not in the Code of Criminal Procedure. It's not issued by -- it's issued by the Texas Supreme Court, and as I understand it, I'm bound by the laws of the Court of Criminal Appeals. If they decide different, then they're deciding different, but at this time your motion is denied.

At no point did the defense argue that failure to submit the spoliation instruction violated either the United States Constitution or the Texas Constitution. Guided by the most recent pronouncement by the Court of Criminal Appeals concerning preservation of error on this issue, we conclude it has been waived for this reason as well.

Having found the issue to be waived, we do not reach the merits. We overrule Point of Error Three and affirm the judgment of the trial court.

June 23, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Antcliff, Judge
Antcliff, Judge, sitting by assignment

(Publish)