

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00197-CR

NOE MENDOZA                                                    APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Noe Mendoza appeals his conviction for indecency with a child by exposure,[2] contending in two points that the evidence is insufficient to support the conviction and that the trial court abused its discretion by admitting evidence of an extraneous offense. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 21.11(a)(2)(A) (West 2011).

1

**Background Facts**

According to the testimony presented at trial, one afternoon in July 2010, A.A., a six-year-old girl, was sitting alone on a bed in her parents' apartment when appellant, who was outside in an alley adjacent to the apartment complex, exposed his erect penis. A.A.'s mother (Mother) entered the bedroom to "fix the bed," and through a window that was nearby and perpendicular to the bed where A.A. was sitting, Mother saw appellant's erect penis while he was waving to her. Appellant's pants were, according to Mother, "[d]own to the half." A.A.'s back had been facing the window.

Mother called for her husband, A.A.'s father (Father), who was in the living room. Upon entering the bedroom, he saw appellant outside the window with his pants around his knees. According to Father, he hit the window, which prompted appellant to pull his pants up and run away.[3] Father ran out of the house and attempted to chase appellant, but he lost appellant after appellant jumped a fence.

The family called the police, and the dispatcher sent Arlington police officer Patricia Ramirez to the apartment. Father told Officer Ramirez what had happened and described what appellant looked like and was wearing—

---

[3]Mother testified that Father "made some signals and [appellant] left" quickly.

information that Officer Ramirez relayed to another officer so that he could begin searching for appellant.  Soon after Officer Ramirez left, Father got into his car and began searching the area.  He saw appellant near a school, and he called the police and told them where he had seen him.  Nathan Deary, another Arlington police officer, was patrolling that section of town, and the dispatcher directed him to the general area where appellant had been seen.  Soon thereafter, Officer Deary found appellant.  When Officer Deary detained appellant, appellant stated that he had been trying to "take a piss."  Officer Ramirez arrived and confirmed with Father that appellant was the suspect. Officer Deary arrested appellant.

A few days later, Mary Margarete Almy, a detective who had been assigned to appellant's case, went to A.A.'s apartment.  She had compiled a photo lineup to present to the family.  Father identified appellant in the lineup as the suspect.  Detective Almy then went to the jail where appellant was being detained, and after he waived his rights, he told her that he had stopped in the alley only to urinate when Mother, while "grinning from ear to ear," tapped on the window, waved at him with her hand, and motioned to a bed.  Appellant told Detective Almy that he ran away because he saw Father and that Mother must have told Father something false about appellant to "save her own skin."

A grand jury indicted appellant for indecency with a child by exposure; the indictment contained an enhancement paragraph alleging that appellant had

3

been previously convicted of a felony. Before trial, the State gave notice to appellant of its intent to offer evidence of several extraneous offenses, including appellant's 2001 conviction for indecent exposure. At trial, appellant pled not guilty, but a jury found him guilty. After appellant pled true to the indictment's enhancement allegation, the trial court sentenced him to eleven years' confinement. Appellant brings this appeal.

**Evidentiary Sufficiency**

In his first point, appellant contends that the evidence is insufficient to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-

4

evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

A person commits indecency with a child by exposure if, with a child younger than seventeen years of age, the person exposes the person's genitals, knowing the child is present, with the intent to arouse or gratify the sexual desire of any person. Tex. Penal Code Ann. § 21.11(a)(2)(A); *see Allen v. State*, 180 S.W.3d 260, 264 (Tex. App.—Fort Worth 2005, no pet.). Appellant has not contested the facts that A.A. was younger than seventeen or that he exposed his genitals. Rather, appellant contends that the exposure accompanied an intent to urinate rather than to arouse or gratify someone's sexual desire.[4] He also argues

---

[4]Appellant concedes that he "admitted that he had been outside the apartment's back window [with] his penis out."

5

that there is insufficient evidence that A.A. saw his genitals, and he seems to assert that there is insufficient evidence that he could see A.A. from the alley and therefore knew that she was present.

**Appellant's sexual intent**

Appellant argues that his urination theory was not "refuted by the police" and that he had no sexual intent or desire for gratification while exposing his penis outside of A.A.'s apartment. Through the admission of appellant's jailhouse interview, the jury learned of his version of the events relevant to this case. Specifically, appellant told Detective Almy that he was walking to buy groceries when he needed to urinate. Appellant said that while he was urinating in the alley next to A.A.'s apartment and facing away from the apartment's windows, Mother tapped on her window, waved at him to come toward her, smiled, and motioned toward a bed. But the jury heard conflicting testimony from Mother, who said that she was upset and called to her husband when she saw appellant in the alley while his pants were "[d]own to the half" and while he was holding his erect penis.

In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

6

Moreover, the jury is free to accept or reject any or all of the evidence of either party. *See Hennings v. State*, 343 S.W.3d 433, 436 (Tex. App.—El Paso 2010, no pet.); *Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.). By its conviction, the jury indicated its choice to believe Mother's account of what had happened rather than appellant's story. Also, as we will explain in more detail below, the jury heard evidence that on a prior occasion, appellant had exposed his erect penis in public while trying to sexually gratify himself and that he likewise had claimed on that occasion that he had only been urinating. The jury therefore had a rational reason to disbelieve appellant's urination theory. Thus, viewing the evidence in the light most favorable to appellant's conviction, we conclude that a rational factfinder could have determined that appellant exposed his genitals "with the intent to arouse or gratify the sexual desire of any person." *See* Tex. Penal Code Ann. § 21.11(a)(2)(A); *Isassi*, 330 S.W.3d at 638.

**The materiality of whether A.A. could see appellant**

Appellant also characterizes the evidence as insufficient because no evidence suggests that A.A. saw appellant. But section 21.11(a)(2)(A) of the penal code does not require a victim of indecency with a child by exposure to be aware of the exposure; all the statute requires is that the offender knew a child was present and exposed his or her genitals with the intent of gratifying someone's sexual desire. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A); *Breckenridge v. State*, 40 S.W.3d 118, 125 (Tex. App.—San Antonio 2000, pet.

7

ref'd) (concluding that the crime of indecency with a child by exposure concerns what the defendant exposed, not what the victim saw); *Wilson v. State*, 9 S.W.3d 852, 856 (Tex. App.—Austin 2000, no pet.) ("As defined by the statute, the offense is based on the accused's actions and intent, not the victim's comprehension. Accordingly, the State need only prove that the defendant's genitals were exposed to the victim, not that they were *actually seen* by the victim."); *Uribe v. State*, 7 S.W.3d 294, 297 (Tex. App.—Austin 1999, pet. ref'd); *see also Metts v. State*, 22 S.W.3d 544, 547 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding similarly when the crime was indecent exposure to an adult). Because the State was not required to prove that A.A. saw appellant's genitals or was aware of their exposure, we hold that the evidence was not insufficient to support appellant's conviction for the State's failure to prove those facts.

**The sufficiency of the evidence that appellant knew of A.A.'s presence**

Finally, appellant appears to challenge the sufficiency of the evidence to prove that he knew that A.A. was present when he exposed his penis and attempted to gratify his sexual desire. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A) (requiring that, for a conviction of indecency with a child by exposure, the defendant must know of the child's presence while the defendant exposes genitals). The circumstantial evidence presented at trial, however, presents several reasons why the jury could have rationally inferred that appellant knew of A.A.'s presence while he was sexually gratifying himself.

8

First, appellant admitted at least five times in his statement to Detective Almy that he knew of a child's presence in the apartment after (under his version of the facts) Mother tapped on the window and waved at him to come toward her. The jury could have disregarded appellant's overall version of the events leading to his conviction but accepted that he knew of A.A.'s presence. *See Franklin*, 193 S.W.3d at 620 ("[T]he jury is free to accept or reject any or all of the evidence of either party. . . .").

Second, the jury heard Officer Ramirez testify that appellant's offense happened during the day, that the curtains to the window in the apartment's bedroom were open, and that a person would have been able to see inside the room from the alley. Third, the jury heard Mother testify that appellant waved to her and could see her in the bedroom. And the jury could have rationally inferred that appellant was already looking at something in the bedroom at the time Mother entered into it (and therefore at the time that he was holding his erect penis) from the following testimony that occurred during cross-examination:

> Q. . . . *When you first saw* [appellant], wasn't this man closer to the chain-link fence than to the window?
>
> A. Yes.[5]
>
> Q. And was he facing you or was he -- did he turn towards you when you walked into the room?

---

[5]While Mother said that appellant was closer to the fence than the window, Father testified that when he came into the bedroom, appellant was within inches of the window.

9

*A.  He was looking inside the window.*  [Emphasis added.]

Later, during redirect examination by the prosecutor, Mother gave the following testimony:

> Q.  It was clear though that he could see you?
>
> A.  Yes.
>
> Q.  And that he could see into that room?
>
> A.  Yes.

Fourth, Detective Almy testified that when she went to A.A.'s apartment and was standing outside of it, she was able to see, through the window, the bed, the television, and down the hallway.  Detective Almy also opined that the bed that A.A. had been sitting on was in "full view of the window," and appellant told Detective Almy that he had seen a bed.

We recognize that other evidence could have raised a conflicting inference about whether appellant knew of A.A.'s presence.  On cross-examination, Detective Almy recognized that it would be hard for someone, from outside in the alley, to see someone who was sitting against the bed's headboard, as, according to Mother's testimony, A.A. was.  She said that she had assumed that appellant could see A.A. and was masturbating at the same time.  Similarly, Mother testified that it would have been difficult for appellant to see A.A. on the bed, which was perpendicular to the window, while looking inside the window.  Again, however, appellant admitted seeing the bed.

10

In viewing all of the evidence in the light most favorable to the jury's verdict and in deferring to the jury's responsibility to resolve conflicts in the evidence, we conclude that the jury could have rationally found, beyond a reasonable doubt, that appellant knew of A.A.'s presence while he was exposing his penis and sexually gratifying himself. *See Isassi*, 330 S.W.3d at 638.

For all of these reasons, we hold that the evidence is sufficient to support appellant's conviction, and we overrule his first point.

**The Admission of an Extraneous Offense**

In his second point, appellant argues that the trial court erred by admitting evidence of an extraneous offense at the guilt-innocence phase of the trial. We review the trial court's admission of evidence under an abuse of discretion standard. *Price v. State*, 351 S.W.3d 148, 150 (Tex. App.—Fort Worth 2011, pet. ref'd); *see Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991) (op. on reh'g). Under this standard, the trial court's ruling will be upheld as long as it falls within the "zone of reasonable disagreement." *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.); *Karnes v. State*, 127 S.W.3d 184, 189 (Tex. App.—Fort Worth 2003, pet. ref'd), *cert. denied*, 129 S. Ct. 2391 (2009).

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity,

11

intent, preparation, plan, knowledge, identity, or absence of mistake or accident

. . . ."  Tex. R. Evid. 404(b);[6] *see Montgomery*, 810 S.W.2d at 387–88. The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility.  *Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref'd).  "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court."  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rebuttal of a defensive theory, such as mistake or accident, is one of the permissible purposes for which evidence may be admitted under rule 404(b). *Id.* at 626; *see Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) ("Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory."), *cert. denied*, 493 U.S. 874 (1989), *overruled on other grounds by Alford v. State*, 866 S.W.2d 619 (Tex. Crim. App. 1993).  In fact, a defendant's opening argument may open the door for the admission of extraneous offense evidence.  *Powell v. State*, 63 S.W.3d 435, 439–40 (Tex. Crim. App. 2001); *Rivera v. State*, 269 S.W.3d 697, 706 (Tex. App.—Beaumont 2008, no pet.); *see also Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (explaining that evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence by

---

[6]The list of admissible purposes of extraneous offenses recited by rule 404(b) is illustrative, not exhaustive.  *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004).

12

leaving a false impression with the jury that invites the other side to respond).

A defendant's cross-examination of witnesses may also open the door for the

admission of extraneous offenses. *See Price*, 351 S.W.3d at 151–52.

Appellant first alluded to his urination theory during voir dire, when his trial

counsel told the jury panel,

> Now, we're going to get to a couple of questions that are probably more suited for the men in this room. I know I kind of laugh when I was thinking about these. . . .
>
> Now, the good part is how many guys are going to raise your hands is what I want to know.[7]  And if you don't, that's okay.  I'm going to ask anyway.  How many guys here or anyone -- I shouldn't say just guys, because when I was a cop, I actually came across some women who were not in the restroom that were going, so it happens.

Then, during her opening statement, appellant's other attorney said,

> Ladies and Gentlemen of the jury, this is not a case of public indecency.  *This is a case about public urination.*  And while that may be offensive, that is the case. . . .  [Appellant] needed groceries, so he was walking north towards the Kroger which is on North Lamar Street.  And it's about a little over a mile and a quarter.
>
> While he was walking, he realized he needed to use the restroom.  He found this alley behind an apartment complex that was fairly secluded.  He went to use the restroom.  Unfortunately, he didn't realize that there was a window and there were people inside. *This is a case about public urination.*
>
> When he realized there were people inside and there were people, you know, yelling at him, he ran.  He didn't want to get a ticket for public urination.  He told Detective Almy, I was using the

---

[7]The record indicates that appellant's counsel had displayed a question about urination to the jury panel without reading the question into the record.

13

restroom. He told Detective Ramirez, Officer Ramirez, I was using the restroom. He told Officer Deary, I was using the restroom.

He has remained consistent that he was using the restroom. *This is a case about public urination, not public indecency.* And I believe that at the end of this trial, the evidence will show that this is a case for another court and another day. *This is a case about public urination.* [Emphasis added.]

Appellant continued to imply that he had been urinating rather than sexually gratifying himself when his counsel asked Officer Ramirez, "[I]f you wanted to use the restroom, would you be more likely to go somewhere private or somewhere public?" Counsel then asked Officer Ramirez whether she had noticed urine in the alley where appellant had been standing, but Officer Ramirez said that she had not walked back there.

During trial, outside of the presence of the jury, the trial court held a hearing concerning whether it would allow testimony from Arlington Police Department Detective Heath Cook. In the hearing, Detective Cook explained that in 2000, he was working at Randol Mill Park, which was a place where "criminal offenses were occurring in the bathrooms." When Detective Cook went into a restroom and stood in front of a urinal that was next to appellant's urinal, Detective Cook never heard appellant urinate; instead, Detective Cook noticed appellant's arm "rocking back and forth" and saw appellant's erect penis, which led Detective Cook to believe that appellant was masturbating. Detective Cook arrested appellant, and appellant "stated over and over, [']I wasn't doing anything

14

wrong, I was only urinating.[']"  Over appellant's objection,[8] the trial court allowed Detective Cook to state these same facts, in more detail, in front of the jury, and the court told appellant that a limiting instruction would be put in the jury charge.[9]

We conclude that the trial court's decision to admit Detective Cook's testimony under rule 404(b), to rebut appellant's defensive theory and to show appellant's sexual intent, which appellant had placed in question, at least falls within the zone of reasonable disagreement.  *See Alami*, 333 S.W.3d at 889. Specifically, the trial court could have reasonably found that appellant's voir dire, opening statement, and cross-examination, which set up appellant's theory that he was only urinating outside of A.A.'s apartment, opened the door for extraneous offense evidence that informed the jury that appellant had once before sexually gratified himself in public while using the same excuse. *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd) (explaining that once the defendant claims a lack of intent, "intent can no longer

---

[8]Appellant's objection included an argument that even if evidence of the extraneous offense was admissible under rule 404(b), the evidence should have been excluded as more prejudicial than probative under rule 403.  *See* Tex. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .").  Appellant has not urged on appeal, however, that the evidence was inadmissible under rule 403, and appellant concedes that the trial court "was requested to and did perform the required balancing test" in admitting the extraneous offense.

[9]The jury charge stated that the jury could consider other offenses or bad acts only in determining lack of mistake, proof of motive, opportunity, intent, preparation, plan, or appellant's state of mind.  The trial court also gave a limiting instruction verbally during Detective Cook's testimony.

be inferred from other uncontested direct evidence, and the State is allowed to prove intent through evidence of other crimes, wrongs, or acts").

Appellant argues that distinctions between the 2000 offense and his act outside of A.A.'s apartment—such as the relative enclosure of the restroom in 2000 and the lack of the presence of a child on that occasion—rendered evidence of the 2000 offense inadmissible. When an extraneous offense is offered to rebut a defensive theory or show intent, however, the law does not require exacting similarity between the extraneous and charged offenses. *See Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993); *Dennis v. State*, 178 S.W.3d 172, 179 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also Mayfield v. State*, Nos. 02-05-00386-CR, 02-05-00387-CR, 2007 WL 938697, at *6 (Tex. App.—Fort Worth Mar. 29, 2007, pet. ref'd) (holding that when the defendant offered a theory that he was framed for sexually assaulting a child, evidence that he had looked into underage girls' bedroom windows while they were undressing was admissible because it displayed the defendant's inappropriate sexual interest in such girls); *cf. Plante v. State*, 692 S.W.2d 487, 493 (Tex. Crim. App. 1985) (noting that there must be a high degree of similarity between the charged and extraneous offenses when the issue is the identity of the defendant).

Although the charged and extraneous offenses certainly have distinct characteristics, we hold that the trial court did not exit the zone of reasonable

16

disagreement, and therefore abuse its discretion, by implicitly determining that the facts of the extraneous offense are sufficiently similar to the facts of this offense to justify its admission under rule 404(b). *See Alami*, 333 S.W.3d at 889. Both offenses involved appellant's sexual gratification in public and exposing himself to others. And more importantly, in both instances, appellant responded to his arrest by claiming that he was only urinating; the admission of the extraneous offense therefore weakened the credibility of appellant's defensive theory.

Finally, appellant argues that the extraneous offense should have been excluded because it occurred ten years before the charged offense and was therefore too remote to be admissible. In the trial court, appellant did not argue remoteness as a ground for exclusion of the evidence. Therefore, we hold that appellant may not raise that argument for the first time on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Chambers v. State*, 903 S.W.2d 21, 32 (Tex. Crim. App. 1995) (holding that a defendant's complaint on appeal about the remoteness of an extraneous offense had been forfeited by the defendant's failure to raise remoteness in the trial court); *Grider v. State*, 69 S.W.3d 681, 686 (Tex. App.—Texarkana 2002, no pet.) ("Although remoteness is a factor, because Grider did not raise the issue of remoteness as a basis for his objections at trial, we are unable to review that issue.").

For all of these reasons, we overrule appellant's second point.

## Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 5, 2012